IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

HOUSING OPPORTUNITIES MADE )
EQUAL OF VIRGINIA, INC., *et al.*, )
                                )
            Plaintiffs, )
                                )
v.                                )   Civil Action No. 3:23-cv-162-HEH
                                )
THOMAS JEFFERSON CROSSINGS )
HOMEOWNERS' ASSOCIATION, )
INC., *et al.*, )
                                )
            Defendants. )

**MEMORANDUM OPINION**
**(Granting Defendants' Motions to Transfer)**

THIS MATTER is before the Court on Defendants Thomas Jefferson Crossings Homeowners' Association, Inc.'s ("TJCHOA") and Priority One Properties, LLC's ("Priority One") (collectively, "Defendants") Motions to Dismiss Plaintiffs' Complaint, or in the alternative, Motions to Transfer Venue under 28 U.S.C. § 1404 (the "Motions"),[1] filed on March 30, 2023. (ECF Nos. 10, 11.) Defendants seek to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(3). (TJCHOA's Mem. in Supp. at 1, ECF No. 13.)[2] In the alternative, Defendants seek to transfer this case to the Western District of Virginia ("WDVA"), Lynchburg Division, pursuant to 28 U.S.C.

---

[1] Although Defendants filed separate motions, because they are substantively identical, the Court addresses the motions together.

[2] The Court will largely incorporate Defendants' arguments as they are substantively similar. To the extent Defendants' arguments vary, the Court will address such arguments separately. The Court will cite to TJCHOA's memorandum in support unless it is necessary to cite to both Defendants' memoranda.

§ 1404. (TJCHOA's Mem. in Supp. at 1.) Plaintiffs[3] oppose Defendants' Motions. The parties filed memoranda supporting their respective positions. The Court heard oral argument on the Motions on June 22, 2023. For the reasons stated herein, the Court will grant Defendants' Motions to Transfer.

On or around 2014, Plaintiffs Mansour and Nick purchased three (3) properties in the Thomas Jefferson Crossings subdivision in Forest, Virginia. (Compl. ¶¶ 3, 9, ECF No. 1.) Defendant TJCHOA is the homeowners' association for Mansour's and Nick's three properties. (*Id.* ¶ 5.) Since April 2019, Defendant Priority One has served as the property management company for Plaintiffs' properties. (*Id.* ¶ 6.) From 2017 to 2022, Defendants allegedly harassed Mansour, Judith, Nick, and Koppenal based on their religion, race, color, and national origin. (*Id.* ¶¶ 10–34.) Due to the alleged discriminatory harassment, Mansour, Judith, and Nick left the subdivision and attempted to sell their properties.[4] (*Id.* ¶ 24.) While Plaintiffs' properties were for sale, Defendants allegedly attempted to stall or prevent the sale of the properties. (*Id.* ¶ 25–30.)

In March 2022, TJCHOA filed suit in state court against Mansour and Nick seeking the demolition of their homes and $450,000 in money damages.[5] (*Id.* ¶ 33.) Plaintiffs allege TJCHOA filed the state suit "to intimidate and harass Plaintiffs and

---

[3] Plaintiffs include: Housing Opportunities Made Equal of Virginia, Inc. ("HOME"); Mansour Etemadipour ("Mansour"); Judith Etemadipour ("Judith"); Nick Etemadipour ("Nick"); and Kelly Koppenal ("Koppenal").

[4] Koppenal still resides in the Thomas Jefferson Crossings subdivision, but alleges she continues to feel unwelcomed and excluded by Defendants. (Compl. ¶ 32.)

[5] The lawsuit has since been removed to the WDVA, Lynchburg Division. (Compl. ¶ 33.)

2

prevent them from enjoying the housing of their choice on the basis of their perceived race and national origin." (*Id.* ¶ 34.) On July 26, 2021, Plaintiffs Mansour, Judith, and Nick filed a complaint with HOME regarding Defendant TJCHOA's housing practices as possible fair housing discrimination. (*Id.* ¶ 35.) HOME's investigation allegedly revealed housing discrimination based on familial status. (*Id.* ¶ 36.) Plaintiffs filed their Complaint in this Court on March 7, 2023. (ECF No. 1.) On March 30, 2023, Defendants filed the current Motions. (TJCHOA's Mem. in Supp. at 1.)

As previously stated, Defendants are seeking to dismiss Plaintiffs' Complaint, or in the alternative, to transfer venue to the WDVA. Under 28 U.S.C. § 1404, a district court may transfer any civil action to another district court in which the action could have originally been brought. *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). That is, the transferee court must have jurisdiction and be a proper venue. *See id.* This rule's purpose is to protect litigants, witnesses, and the public from unnecessary expense and inconvenience. *See Van Deusen v. Barrack*, 376 U.S. 613, 616 (1964). District courts have broad discretion to evaluate transfer through "an individualized, case-by-case consideration of convenience and fairness." *See Stewart Org., Inc. v. Rocoh Corp.*, 487 U.S. 22, 29 (1988). In the Fourth Circuit, courts consider the "entire sequence of events underlying the claim" to determine where venue is appropriate. *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004). There can be more than one proper venue in a federal suit. *Id.*

Once a district court determines that the original action could have been brought in the transferee court, transferor courts within the Fourth Circuit must conduct a balancing

3

test to determine whether the transfer is permissible under § 1404(a). *See Tr. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015); *Pragmatus AC, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 994 (E.D. Va. 2011). This balancing test weighs four factors: (1) plaintiff's choice of forum; (2) witness convenience and access to sources of evidence; (3) convenience of the parties; and (4) the interest of justice. *Plumbing Servs., Inc.*, 791 F.3d at 444. The moving party bears the burden of proof to demonstrate that transfer is appropriate. *See Atl. Marine Constr. Co. v. United States*, 571 U.S. 49, 49 (2013). In the present case, there is no dispute as to whether the WDVA can exercise jurisdiction or is a proper venue in this lawsuit.[6] (TJCHOA's Mem. in Supp. at 6–7; HOME's Mem. in Opp'n at 4–5, ECF No. 14.)[7] Therefore, this Court must now weigh the four balancing factors to determine if transfer is appropriate.

First, "[t]he plaintiff's choice of forum 'is typically entitled to substantial weight, especially where the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action.'" *See Pragmatus*, 769 F. Supp. at 995 (citing *Heinz Kettler GmbH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010)). Plaintiffs filed this suit in the Eastern District of Virginia ("EDVA") and reinforced this choice in their

---

[6] The WDVA, Lynchburg Division, is a proper venue because Defendants reside in this District. Nonetheless, the Court believes a substantial part of the events giving rise to Plaintiffs' claims occurred in Bedford County, Virginia, which is within the WDVA. Additionally, there is subject matter jurisdiction as the alleged claims arise under the laws of the United States, creating federal question jurisdiction under 28 U.S.C. § 1331.

[7] Plaintiffs interposed their memorandum in opposition to Defendant TJCHOA's Motion to Defendant Priority One's Motion because their Motions are substantively identical. The Court's citations refer to Plaintiffs' memorandum in opposition to Defendant TJCHOA.

opposition to Defendants' Motions, so their venue preference is clear. (Compl. ¶ 9; HOME's Mem. in Opp'n at 4–5.) Plaintiff HOME is based and maintains its principal place of business in Richmond, Virginia, within the EDVA. (Pl.'s Mem. in Opp'n at 2.) However, the remaining four (4) Plaintiffs reside outside of the EDVA. (Compl. ¶¶ 9, 13–15, 24, 32.)

Plaintiffs contend that a substantial part of the events or omissions giving rise to this claim occurred in the EDVA, namely within Richmond, based on HOME's approximately ninety-five (95) hours[8] spent investigating Defendants' conduct. (HOME's Mem. in Opp'n at 3.) Plaintiffs argue that HOME incurred damages and harm within Richmond due to its efforts in this case. (*Id.* at 3–4.) However, Plaintiffs overlook what they call the focal point of this case (*id.* at 6)—Defendants' alleged discriminatory actions. Plaintiffs allege Defendants' discriminatory conduct occurred over six (6) years, from 2017 to 2022, in Forest, Virginia, which is located within the WDVA. (Compl. ¶¶ 10–34.) HOME's work began in July 2021 at the earliest.[9] The alleged discriminatory harassment against Plaintiffs Mansour, Judith, Nick, and Koppenal, and the alleged discriminatory tactics in stalling or preventing the sale of Plaintiffs' properties occurred from 2017 to May 2021 in the WDVA, prior to HOME's involvement. (*Id.* ¶¶ 25–30.) The state lawsuit by TJCHOA and HOME's investigation

---

[8] The ninety-five (95) hours are comprised of sixty-five (65) hours investigating and thirty (30) hours preparing and conducting a testing investigation. (HOME's Mem. in Opp'n at 3.)

[9] Plaintiffs and Defendants disagree as to when HOME became involved in this case. The Court need not decide this factual dispute in deciding Defendants' Motions.

5

are the only events that took place after HOME became involved in this case. (*Id.* ¶¶ 33–36.) Further, HOME's investigation allegedly uncovered housing discrimination based on familial status, and not on the basis of race, religion, color, and national origin as the four (4) other Plaintiffs allege. (*Id.* ¶ 36.) Defendants' conduct in which Plaintiff HOME bases its alleged findings also occurred in person at Thomas Jefferson Crossings in Bedford County, Virginia, within the WDVA. (*Id.* ¶ 36.) Thus, the vast majority of the sequence of events underlying this claim occurred in the WDVA.

The second, and most important, factor is the convenience of the venue for witnesses and access to other sources of evidence. *Plumbing Servs., Inc.*, 791 F.3d at 444; *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 737 (E.D. Va. 2007). Particularly important is the convenience and willingness of nonparty witnesses to testify at the venue. *See Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 718 (E.D. Va. 2005) (citing *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 637 (E.D. Va. 2003)).

In the present case, Plaintiffs assert that most of their witnesses and evidence are located here in Richmond. (HOME's Mem. in Opp'n at 5.) However, Plaintiffs do not provide any further details regarding their witnesses or evidence. Conversely, Defendants are located in the WDVA, along with their "witnesses, documents, and all other items of evidentiary value." (TJCHOA's Mem. in Supp. at 6.) During oral argument, Defendants described that their witnesses, many of whom are elderly, and evidence in this case are located in the WDVA, and remaining in the EDVA would require Defendants to transport all of their witnesses and evidence. Moreover, Plaintiffs' properties at issue in this case are located in Thomas Jefferson Crossings subdivision,

6

within the WDVA. (Compl. ¶ 3; TJCHOA's Mem. in Supp. at 7.) As previously discussed, the primary issue concerning Defendants' allegedly discriminatory conduct occurred entirely in the WDVA. (Compl. ¶¶ 10–36.) Thus, any deference that could be afforded to Plaintiffs' choice of forum is clearly outweighed by the other convenience factors to the parties and the fact that the Thomas Jefferson Crossings subdivision in Forest, Virginia, is central to this case.

Third, the Court must consider whether the transferee venue is more convenient for the parties to the action. *Plumbing Servs., Inc.*, 791 F.3d at 444. While this Court may be the most convenient for HOME, the remaining Plaintiffs reside outside of the EDVA. (Compl. ¶¶ 9, 13–15, 24, 32.) Additionally, the WDVA is more convenient for Defendants as both they and their witnesses and evidence are located there. (TJCHOA's Mem. in Supp. at 6–7.) Defendants argue that because the parallel state court proceeding between TJCHOA and Mansour and Nick has been removed to the WDVA and remains ongoing, these parties will not be inconvenienced. (*Id.* at 7.) The Court agrees that transferring the case would convenience the parties, witnesses, and courts involved. (*Id.*) Further, the ongoing matter between TJCHOA and Mansour and Nick involve the same properties at issue in this case, and if not transferred, would cause these parties to litigate over the same properties in two separate forums. (Compl. ¶ 33.)

Finally, the Court must also consider the interest of justice in facilitating the transfer of this lawsuit. *Plumbing Servs., Inc.*, 791 F.3d at 444. This factor "encompasses public interest factors aimed at systemic integrity and fairness, the most prominent elements of which are judicial economy and the avoidance of inconsistent

7

judgments." *Jaffe v. LSI Corp.*, 874 F. Supp. 2d 499, 505 (E.D. Va. 2012) (citations omitted). Fairness may also include an evaluation of docket congestion, interest in local disputes being resolved at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law. *Id.* The Supreme Court acknowledges that "[t]here is a local interest of having localized controversies decided at home." *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).

The interests of justice calculation includes the interest of having local controversies decided at home, *see id.*, and in this case the controversy occurred entirely at the Thomas Jefferson Crossing subdivision in the WDVA. (Compl. ¶¶ 10–36.) While HOME's work in this case may have occurred at least in part in the EDVA, all of Defendants' alleged conduct giving rise to this claim took place in the WDVA. (*Id.*) Transfer will also result in the WDVA deciding cases relating to the same properties which promotes judicial economy and assists in avoiding inconsistent judgments. *See Jaffe*, 874 F. Supp. 2d at 505. Taking these factors into consideration, the Court finds that the interests of justice support transferring this case to the WDVA.

After weighing the above-listed factors, this Court finds it appropriate to transfer this case to the Western District of Virginia, Lynchburg Division, pursuant to § 1404(a). Accordingly, the Court will grant Defendants' Motions to Transfer. Because the Court will grant Defendants' Motions to Transfer, it need not consider Defendants' Motions to Dismiss.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: August 22, 2023
Richmond, Virginia

9